(Docket Entry Nos. 14 & 16)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

ROBERT S. ASHWORTH,

        Plaintiff/Counterclaim Defendant,

    v.                               Civil No. 04-0773 (RBK)

UNITED STATES,

        Defendant/Counterclaim Plaintiff.

**O P I N I O N**

**KUGLER**, United States District Judge:

        Presently before the Court in this action by Plaintiff Robert Ashworth to recover taxes paid to the Internal Revenue Service are cross-motions for summary judgment by the United States of America and Robert Ashworth.  Collectively, the parties' motions invite the Court to decide whether Ashworth was a person responsible for payment of his employer's payroll taxes under 26 U.S.C. § 6672.  For the reasons stated below, the Court will decline the parties' invitations because whether Ashworth was a responsible person must be decided by a jury in this case.  The United States also seeks judgment on whether Ashworth acted willfully.  The Court will grant that motion on the limited issue of Ashworth's willfulness.

I.  INTRODUCTION

The tax liability at issue in this case arose out of the Lavelle Company's ("Lavelle") failure to pay employee payroll taxes deducted from employees' paychecks during the third and fourth quarters of 1998 and the third quarter of 1999.  Lavelle ceased operations during the third quarter of 1999 and thus had no further tax liability after that time.  Ashworth was the controller at Lavelle and until July of 1998 had full authority to pay all of the company's debts.  This is undisputed.  Specifically, Ashworth had authority to sign checks on behalf of Lavelle, to make payments to creditors, to pay taxes owed, and to issue payroll checks.  This authority, according to Ashworth, was given to him when he was hired at Lavelle in November 1997 by Al Bailey–president of Lavelle at the time.  Ashworth deposed that this authority was given to him by Bailey when Bailey told Ashworth that he "was responsible for payment of all bills in a manner consistent with professional ethics, professional standards and my good judgment on what to pay and when."  (Ashworth Dep. at 60:16-20).

Ashworth's authority changed, however, when Bailey left Lavelle and was replaced by William Miller.  Though not completely clear from the record, it appears Bailey left Lavelle sometime in May 1998.  (See Ashworth Dep. at 164:15-16).  According to Ashworth, Miller took over as president of Lavelle in July of 1998.  Prior to that, Miller worked for Eastwind, the parent and sole owner of Lavelle.  On Miller's arrival at Lavelle, Ashworth claims to have lost the authority, granted to him by Bailey, to

2

pay Lavelle's bills. According to Asworth's deposition testimony, his authority to write and sign checks on behalf of Lavelle had not changed, rather "the authority to make a decision on who was to be paid and who was not to be paid. That changed." (Ashworth Dep. at 62:11-14). As for how his authority was removed, Ashworth deposed, "when Mr. Miller became president, Mr. Miller gained financial control . . . . once Mr. Bailey left, he was in total control. He had total control of the operations because he was the president of the company, and he had total control of the finances because he took it from me. He determined what would be paid, what would not be paid and when it would be paid." (Ashworth Dep. at 24:19 to 25:4). Asked how Miller removed his authority to pay bills, Ashworth responded, "[f]lat out told me don't cut these checks. Don't pay this and don't pay that. It was most explosive." (Ashworth Dep. at 68:8-11).

After Miller's tenure as president began, Ashworth admits to having had some authority to pay relatively minor bills. Ashworth could still pay COD's (Cash on Delivery). COD payments were generally in small amounts–in the hundreds of dollars–and became a more frequent occurrence as Lavelle's financial situation became more dire. But as to larger bills, including taxes, Ashworth stated that he had no authority to pay them and was forbidden by Miller to pay them. Asked whether Miller ever told him the consequences of not following his orders, Ashworth deposed, "[s]pecifically, no. Implied, yes." As to how it was implied, Ashworth deposed "[y]our job is now limited. Your job is not to do this. . . . This is the definition of your job. These are now your job

3

responsibilities. These are no longer your job responsibilities. You will not do them." (Ashworth Dep. at 158:11-17).

The deposition testimonies of Dora Madero and Michael Schlupp tend to corroborate Ashworth's account of not having authority during Miller's tenure. Ashworth hired Madero to work in the accounts payable department for him while Bailey was still president of Lavelle. She was the only person Ashworth ever hired to work at Lavelle. Madero continued to work for Lavelle while Miller was president. Madero deposed that, from her vantage point, Ashworth and Miller discussed which creditors should get paid; but she never participated in any such discussion with them. When asked if there were any times when Ashworth made a decision about who to pay without first consulting Miller, Madero answered, "[n]o, I never saw that." (Madero Dep. at 18:24-19:3). As to the specific topic of payroll taxes, Madero was asked whether, during Miller's tenure, Ashworth had authority to pay payroll taxes, she responded, "[n]o, he did not have the authority." (Madero Dep. at 82:6-9). Later in her deposition, Madero was asked, "[s]o even though Bob signed the checks, your testimony is he really, during this period of time . . . had no control?" She answered, "No, he had no control." (Madero Dep. at 89:10-14).

Schlupp was the Sales Director for Lavelle while Miller was president. Schlupp testified that he participated in meetings with Miller and Ashworth concerning which creditors should get paid. His understanding was that both Ashworth and Miller needed to be present before a decision about paying creditors could be made. In pressing

4

for clarification the questioner asked, "[i]s it your understanding that if [Ashworth] were there alone, during the same one year period of time, that [Ashworth] alone could have made a decision about that." His answer tends to confirm Ashworth's account of bounded authority: "I believe he could have made the decision on his own depending on I guess the amount. And there was no specific threshold. But I mean if it was a small amount of [fifty] dollars or something like that to pay for postage or something like that, I believe Bob could do it on his own." (Schlupp Dep. at 68:2-9) To the follow-up question of "[h]ow about if it was something more than that?," Schlupp answered, "I think he would have discussed it with Miller." (Schlupp Dep. at 68:10-13). Asked if Miller was similarly restricted in his decision making, Schlupp responded, "[h]e could have made a decision but it would have had to come down to [Ashworth] to issue a check." (Schlupp Dep. at 68:14-21).

    Alas, the payroll taxes owed by Lavelle went unpaid for the third quarter of 1998, fourth quarter of 1998, and third quarter of 1999. During its investigation that centered on these unpaid taxes, the IRS provided Ashworth a "Trust Fund Recovery Penalty Interview" form. The form posed six questions regarding the interviewee's authority to manage the company's financial affairs. The form is designed so that the interviewee must check either "Yes" or "No," and then provide the date range during which the interviewee held, or did not hold, the particular authority. Ashworth checked "Yes" for all six of the following questions: Did you (1) Hire/Fire employees; (2) Manage

5

employees; (3) Direct or authorize payment of bills; (4) Sign/Countersign payment of bills; (5) Authorize payroll checks; (6) Prepare and/or sign payroll tax returns?  The only date range Ashworth inserted on the form was November 1997 to June 1999.  The form also queries whether other people held the same authority, so Ashworth listed Miller as having all of the same authorities Ashworth attributed to himself.  Ashworth did not list Bailey as ever having authority and did not note any distinction between the period before or after July 1998.  On the part of the form that permits additional comments, Ashworth wrote, "[a]s controller I had authority to determine payment(s), sign checks, and allocate funds.  The case of mortgages and taxes I was told by my supervisor not to pay them."

    The deposition testimony of William Miller is consistent with Ashworth's responses on the IRS form and tends to contradict the testimonies of Ashworth, Schlupp, and Madero.  Miller deposed that he did not become president of Lavelle until December of 1998–well-after the payroll taxes had accrued for the third quarter of 1998–and that Ashworth was responsible for the non-payment of payroll taxes.  He further deposed that he never restricted Ashworth's authority to pay any bills, let alone payroll taxes.[1]

    After filling out the interview form, Ashworth sent a letter to Douglas Engler of the IRS, formally protesting the trust fund recovery penalty the IRS was

---

[1] The United States submitted Miller's deposition testimony in response to Ashworth's motion for summary judgment.  Because it was not submitted with its original motion, this testimony cannot be used to show the United States is entitled to summary judgment.  Rather, the Court will consider this evidence only in deciding whether Ashworth has established his entitlement to summary judgment.

planning to impose on Ashworth. In the letter, Ashworth explained that "the authority to pay taxes and other specific debts of my employer was removed from me by the President and my supervisor, Mr. William Miller." Ashworth then elaborated that he was "repeatedly and expressly told not to pay the taxes in question . . . ."

   As to bills Ashworth did pay, the record contains several checks to suppliers along with one check to PECO Energy. Each of the checks in the record carries a date that is after Lavelle's payroll tax liability accrued; and each carries Ashworth's signature. Also bearing Ashworth's signature are two federal tax forms. One is Lavelle's Form 941 Quarterly Federal Tax Return that is dated October 30, 1998 and reflects a tax liability of $156,747.22 for the third quarter of 1998. The other is Lavelle's 940-EZ Annual Federal Unemployment Tax Return that is dated January 29, 1999 and reflects an Unemployment Tax Liability of $3,342.42 for the year of 1998. Also, it is undisputed that Ashworth issued and signed the payroll checks for Lavelle employees the entire time he was controller.

   In response to a Trust Fund Recovery Penalty assessment of $142,574.06 from the IRS, Ashworth paid nominal amounts and filed a refund claim. Specifically, Ashworth paid $1,311.25 for the third quarter of 1998, $100 for the fourth quarter of 1998; and $100 for the second quarter of 1999. He then filed claims for full refunds of those amounts, all of which were denied. See Complaint exhibit C. Ashworth's next step was to file this civil action against the United States in which he seeks (1) judgment in his

7

favor in the amount of $1511.25 plus interest; (2) abatement of the entire Trust Fund Recovery Penalty that remains; and (3) attorney's fees.

Seeking to enforce its original assessment, the United States brought a counterclaim against Ashworth.  In its counterclaim, the United States alleges Ashworth was a responsible person under 26 U.S.C. § 6672 and that he willfully failed to collect, truthfully account for, and pay the payroll taxes owed by Lavelle.  The United States seeks judgment in its favor in the amount of $157,163.38, representing the remaining balance of taxes owed plus credits and interest through June 2, 2004, plus any interest that has since accrued.  The United States also seeks an award of its costs in defending Ashworth's action and in pursuing its counterclaim.

Both parties have filed a motion for summary judgment.  The motions are identical in that they urge this Court to decide as a matter of law whether Ashworth is liable for the Trust Fund Recovery Penalty assessed by the IRS.

## II.  SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  In deciding whether there is a disputed issue of material fact, a court must view the facts and all reasonable inferences

in a light most favorable to the nonmoving party.  Id. at 250; Anderson v. Consol. Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of persuasion at trial, however, "the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  The non-moving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish the existence of a genuine issue of material of fact.  FED. R. CIV. P. 56(e); Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989) (citation omitted).  "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial' mandates the entry of summary judgment."  Watson v. Eastman Kodak Co., 235 F.3d 851, 857 (3d Cir. 2000) (quoting Celotex, 477 U.S. at 322).

III. DISCUSSION

The Court will deny both motions for summary judgment on the issue whether Ashworth was a responsible person but will grant the motion of the United States on the limited issue whether Ashworth acted willfully.  In short, disputed issues of fact preclude the Court from entering summary judgment in favor of either party with respect to Ashworth's status as a responsible person.  The undisputed evidence makes it clear, however, that Ashworth acted willfully.

Employers must withhold federal taxes from employees' wages and keep those withheld amounts in trust for the United States.  26 U.S.C. §§ 3102, 3402, 7501.  If an employer fails to do this, the IRS is permitted to recover the money owed from those responsible within the employer's organization.  26 U.S.C. § 6672(a); Greenberg v. United States, 46 F.3d 239, 244 (3d Cir. 1994).  The question of liability under section 6672 is determined by two questions: (1) whether the person can be considered a responsible person; and (2) if properly considered a responsible person, whether the person "willfully failed to collect, truthfully account for or pay over federal employment taxes."  United States v. Carrigan, 31 F.3d 130, 133 (3d Cir. 1994).

A.  Responsible Person Under Section 6672

As interpreted by the Third Circuit, responsibility under section 6672 "is a matter of status, duty, or authority, not knowledge.'" Carrigan, 31 F.3d at 133 (quoting

10

Quattrone Accountants, Inc. v. IRS, 895 F.2d 921, 927 (3d Cir. 1990)).  The ultimate question in this inquiry is "whether the person had the power to determine whether the taxes should be remitted or paid or had the final word as to what bills should or should not be paid and when."  Vinick v. Comm'r of Internal Revenue, 110 F.3d 168, 172 (1st Cir. 1997) (citations and internal quotation marks omitted).  As the Third Circuit has put it, a responsible person is one with significant–not necessarily exclusive–control over the company's finances.  Carrigan, 31 F.3d at 133 (citation omitted).  One has significant control "if he has the final or significant word over which bills or creditors get paid."  In addition to the foregoing considerations, the Third Circuit requires courts to consider the following six factors:

> (1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the taxpayer's signature on the employer's federal employment or other tax returns; (4) the identity of the officers, directors and shareholders of the corporation; (5) the identity of the individuals who hired and fired employees; and (6) the identity of the individual(s) who were in charge of the financial affairs of the corporation.

Id. at 133 (citing Brounstein v. United States, 979 F.2d 952, 954-55 (3d Cir. 1992)).

Applying these principles, including the above-enumerated factors, to the present case demonstrates plainly that the record does not permit a conclusion as to Ashworth's status as a responsible person.  Ashworth's control over the finances of Lavelle was essentially absolute until July 1998.  That is undisputed.  Bailey told Ashworth that he had autonomous control over Lavelle's finances.  Around July 1998, Miller told him that he had no authority over the company's finances.  Thus, at one point,

11

Ashworth was clearly a responsible person under section 6672.  But at another point, at least some evidence shows that he lacked authority to make decisions about Lavelle's finances.

Turning to the six factors above, Ashworth was not a corporate officer, director, or shareholder; and there is no evidence that Lavelle's by-laws attached any significance to Ashworth's position as controller.  Thus, factors one and four tilt in Ashworth's favor.  On the other hand, factors two and three lean against him inasmuch as he had check-signing authority and signed Lavelle's tax returns, including those related to employee payroll taxes.  The fifth factor is of debatable significance in this case.  On the one hand, Ashworth had power to hire and terminate the employees that worked for him.  But in practice, that translated into one instance of hiring–Dora Madero, whom Ashworth hired during Bailey's tenure–and zero terminations.

In essence, the Court has already addressed the sixth factor.  As controller, Ashworth was at least nominally in control of Lavelle's finances during the relevant quarters.  As president, Miller also exercised control.  Ashworth's responses on the IRS interview form tend to paint a different, less hazy picture about control of Lavelle's finances; as does Miller's testimony. Specifically, Ashworth's responses tend to demonstrate that he had significant decision making authority in all relevant areas.  His comments on that form reflect an attempt to explain why taxes were not paid, but the part of the form that permitted Ashworth to note the dates on which he held the particular

12

authorities at issue presented an even better opportunity to explain himself.  For instance, he noted that he had authority to direct or authorize payment of bills and, instead of noting that his authority in that area had been usurped, he indicated he had that authority for his entire stay at Lavelle.  Miller, in his deposition, placed the blame for not paying the payroll taxes at Ashworth's feet and claimed Ashworth's authority to pay bills was never restricted, in any form.  Schlupp and Madero seem–from their deposition testimonies–to agree with Ashworth's account.

       Ultimately, the jury will need to weigh the testimonies of Ashworth, Miller, Schlupp, and Madero, along with the many documents the United States has set forth showing some level of authority held by Ashworth during the relevant quarters.  From this evidence, a jury would be permitted to reach one of the two competing conclusions.  The jury must also decide from this evidence when Miller became president and whether any usurpation of Ashworth's control affected the entire time taxes were not paid.  To be sure, and for the purposes of the motions before the Court, neither the United States nor Mr. Ashworth has established an absence of a genuine issue of material fact.  Thus, neither party is entitled to judgment as a matter of law.

       B.  <u>Willfulness under Section 6672</u>

       The United States also moves for summary judgment on the issue of Ashworth's willfulness in not paying Lavelle's payroll taxes.  The argument is that,

assuming Ashworth is found to be a responsible person under section 6672, no jury could conclude that Ashworth did not act willfully. The Court agrees with the United States on this point and will grant its motion with respect to the issue of willfulness under section 6672.

A person is liable under section 6672 only if he was a responsible person who acted willfully in not paying payroll taxes. As the Court has already ruled, a jury must decide whether Ashworth was a responsible under section 6672. A person acts willfully in not paying payroll taxes if he pays other creditors, including employees, when he knows that the payroll taxes are due and owing to the federal government. Greenberg, 46 F.3d at 244; In re Lartz, 301 B.R. 807, 811 (E.D. Pa. 2003). The record is clear on this point: Ashworth made payments to creditors and employees with knowledge–evidenced by his signature on the company's quarterly tax return–that Lavelle owed taxes to the federal government. Ashworth's argument that he lacked authority to pay payroll taxes will have to be assessed by a jury. But if the jury finds he had authority to pay the payroll taxes, then there can be no doubt that he willfully failed to pay the taxes owed by Lavelle.

Accordingly, the Court will grant the United States' motion on the issue of willfulness under section 6672.

**IV. CONCLUSION**

For the reasons expressed in the Opinion above, the Court will deny

Ashworth's motion for summary judgment and will grant in part and deny in part the motion for summary judgment by the United States.  An Order will follow.


Dated: 5-9-05

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge